UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN LYNN FLURY,                                    Case No. 20-10742

                          Plaintiff,          George Caram Steeh
     v.                                      United States District Judge

ANDREW SAUL                                          Curtis Ivy, Jr.
COMMISSIONER OF SOCIAL                               United States Magistrate Judge
SECURITY,

                 Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOs. 10, 11)**

Plaintiff Robin Lynn Flury ("Plaintiff") brings this action pursuant to 42
U.S.C. § 405(g), challenging the final decision of Defendant Andrew Saul,
Commissioner of Social Security ("Commissioner") denying her application for
child's insurance benefits and disability insurance benefits under the Social
Security Act (the "Act"). This matter is before the United Magistrate Judge for a
Report and Recommendation on Plaintiff's motion for summary judgment (ECF
No. 10), the Commissioner's cross-motion for summary judgment (ECF No. 11)
and the administrative record (ECF No. 7).

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**
Plaintiff's motion for summary judgment (ECF No. 10), **GRANT** Defendant's

motion for summary judgment (ECF No. 11), and **AFFIRM** the Commissioner's decision.

## I.   DISCUSSION

### A.   Background and Administrative History

Plaintiff alleges her disability began on July 9, 2008, at the age of 21.  (ECF No. 7,  PageID.35, 44).  She filed an application for child's insurance benefits on February 14, 2011[1] and disabled insurance benefits on June 6, 2017.  (*Id.* at PageID.49).  In her disability report, she listed Post Traumatic Stress Disorder, Anxiety, Arthritis, Complex Heel Fracture, Complex Bilateral Ankle Fractures, Complex Hip and Pelvis Fracture, Severe Back Pain, Severe Depression, Traumatic Brain Injury ("TBI"), Nerve and Back Damage, Obesity, Osteoporosis and Degenerative Disc Disease as limiting her ability to work.  (*Id*. at PageID.99-100).

Plaintiff's application was initially denied on August 21, 2017.  (*Id.* at PageID.35).  She then requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.*).  On September 19, 2018, ALJ Kevin W. Fallis held a hearing, at which Plaintiff and Toni McFarland, the vocational expert ("VE") in the matter,

---

[1]  Plaintiff's February 14, 2011, application for child insurance benefits was not resolved when initially filed.  The Court was not furnished any information regarding the cause of the delay.  Plaintiff does not include any complaint or argument in her briefing regarding the delay nor does she provide an explanation as to the basis for the delay.  Thus, the Court will not endeavor to address any potential issues concerning the delay as suggested by the Commissioner in its cross motion.

testified.  (*Id.* at PageID.64-98).  On February 26, 2019, ALJ Fallis issued an

opinion, which determined that Plaintiff (i) was disabled under sections 216(i) and

223(d) of the Social Security Act, from July 9, 2008 through January 5, 2011 and

(ii) had been disabled under section 223(d) of the Social Security Act from July 9,

2008 through January 5, 2011.  (*Id.* at PageID.49).

    Plaintiff submitted a request for review of the hearing decision.  (*Id.* at

PageID.23).  However, on February 12, 2020, the Appeals Council denied

Plaintiff's request for review.  (*Id.* at PageID.20).  Thus, ALJ Fallis's decision

became the Commissioner's final decision.  Plaintiff timely commenced the instant

action on May 11, 2020.[2]  (ECF No. 1).

### B.    Plaintiff's Medical History

#### 1.   The July 9, 2008 through January 5, 2011 Time Period

##### a.  Physical Impairments

Plaintiff was involved in an automobile accident on July 9, 2008.  (ECF No.

7, PageID.104, 334).  The accident resulted in Plaintiff experiencing several

injuries.  (*Id.* at PageID.103, 334).  She fractured her left hip and pelvis which

caused a significant discrepancy between the length of her right and left legs.  (*Id.*

---

[2] Although the format of Plaintiff's Motion for Summary Judgment does not comply with Eastern District of Michigan Local Rules 5.1 and 7.1, the Court will consider the motion in this instance.  In the future, if Plaintiff fails to submit a brief that is compliant with Local Rules 5.1 and 7.1 the brief is subject to being stricken.

at PageID.517). CT scans of the Plaintiff's pelvis showed "comminuted fracture of the left iliac bone, an extensively comminuted fracture of the left acetabulum involving both anterior and posterior columns, numerous pelvis fractures, and minimal diastasis of the left SI joint." (*Id.* at PageID.1211, 1217, 1222, 1231). Based on Plaintiff's injuries, physicians prescribed her a wheelchair and she received Vicodin and morphine. (*Id.* at PageID.334, 1196).

On July 18, 2008, Plaintiff underwent an open reduction with internal fixation and plate insertion to repair the fractures. (*Id.* at PageID.358). Subsequently, Plaintiff was instructed to be non-weight bearing on her left leg. (*Id.* at PageID.339). Her physical therapist noted she had "good range of motion and improving strength after the surgery." (*Id.* at PageID.354). On August 1, 2008, Plaintiff was discharged from the ICU and "subsequently transferred home due to non-weight bearing precautions secondary to the pelvic fractures." (*Id.* at PageID.379).

By December 9, 2008, Plaintiff was able to ambulate with a cane. (*Id.* at PageID.967). On February 18, 2009, although she appeared at an orthopedic appointment ambulating without a supportive device, she had marked limitation of motion in her left hip. (*Id.* at PageID.937). On February 27, 2009, an EMG and a CT scan were performed. (*Id.* at PageID.517, 939). The EMG showed isolated

4

injury to the superior gluteal nerve.  (*Id.* at PageID.939).  The CT scan showed that the Plaintiff's left hemipelvis fracture was healing.  (*Id.* at PageID.517).

On August 6, 2009, Plaintiff's doctor noted that her left leg was shorter than her right leg; Plaintiff had a significant leg discrepancy.  (*Id.*).  Later, her left hip was surgically replaced on September 25, 2009 due to posttraumatic arthritis.  (*Id.* at PageID.1269).  The medical records indicate that although Plaintiff's fracture healed appropriately, the replacement was necessary due to Plaintiff experiencing significant pain and disability.  (*Id.* at PageID.545).  During an October 15, 2009 doctor's visit, Plaintiff informed her doctor that she was satisfied with her leg lengths.  (*Id.* at PageID.515).

On May 20, 2010, Plaintiff returned to her orthopedic surgeon because she was experiencing intermittent pelvis pain.  (*Id.* at PageID.513).  During the physical examination, it was noted that Plaintiff had adequate range of motion and no instability.  (*Id.*).  Subsequent visits to her orthopedic surgeon in 2010 and 2011 indicated she had very little to no complaint regarding her hips.  (*Id.* at PageID.509,1158, 1162, 1164).  On January 5, 2011, the Plaintiff's orthopedic notes provided that Plaintiff had "done quite well after surgery," and "had no complaints of hip pain."  (*Id.* at PageID.1164).  More importantly, the doctor's notes reflect  "no restrictions with regards to work as a result of [Plaintiff's] hip." (*Id.* at PageID.509-510,1165).

b.   Psychological Impairments

As a result of the July 9, 2008 motor vehicle accident, Plaintiff also suffered a mild traumatic brain injury which caused depression and anxiety.  (*Id.* at PageID.381).  On the date of the accident, Plaintiff was treated at Hurley Medical Center as she was combative and confused.  (*Id.* at PageID.105).  Her vision was blurry and she was experiencing dizziness and hallucinations.  (*Id.*).  A CT scan revealed she had a hemorrhagic contusion.  (*Id.* at PageID.344).  The next day, a follow up CT scan was taken which showed no bleeding, hypodensity, mass effect or midline shift.  (*Id.* at PageID.1225).

During the fall of 2008, Plaintiff's neurological testing revealed her cognitive functioning was not impacted by the contusion.  (*Id.* at PageID.384).  The notes from her neuropsychological evaluation indicated that she denied cognitive issues.  (*Id.* at PageID.379).  Further, the notes indicated she was taking an online college sociology course and "performing relatively well."  (*Id.*).  During one of her neuropsychological consult sessions, Plaintiff stated she continued to experience persistent hip pain but "was now able to handle it without pain medications."  (*Id.* at PageID.381).  At the time, although she experienced several falls, Plaintiff was able to "bear weight on the right leg and used a walker for ambulation and a wheelchair at times for community visits."  (*Id.*).  On November 5, 2008, during a neuropsychological feedback session, Plaintiff informed her

neuropsychologist that her pain was "being relatively well controlled" and felt she could continue to take online courses.  (*Id.* at PageID.388).  Plaintiff's neuropsychologist notes revealed she was "unaware of the actual severity of her injuries."  (*Id.*).  Nevertheless, the neuropsychologist felt that neither continued psychotherapy nor neuropsychological assessment were necessary.  (*Id.*).

Later, during a follow-up appointment in 2009, Plaintiff stated "she felt ready to return to work."  (*Id.* at PageID.1264).  On a psychosocial assessment, Plaintiff indicated she had no issues with her friends or family and did not experience "excessive hostility."  (*Id.* at PageID.840).  On October 14, 2010, Plaintiff's Global Assessment of Functioning Score  ("GAF") was assessed at 52 and later at 60 during March 2011.  (*Id.* at PageID.845, 866).  As of November 30, 2010, Plaintiff's appearance, thought content, affect and thinking were rated as normal.  (*Id.* at PageID.858).

### 2.    Post-January 5, 2011 Time Period

#### a.  Physical Impairments

The ALJ found that as of January 5, 2011, Plaintiff experienced a medical improvement related to her ability to work as there had been an increase in her residual functional capacity (20 C.F.R. 404.1594(b)(4)(i)).  (*Id.* at PageID.45).  As of January 5, 2011, Plaintiff's condition did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R § 404, Subpart P, Appendix

1.  (*Id.* at PageID.43).  Although in 2008 she suffered a significant pelvis fracture, she was able to ambulate with a cane within six months of the accident.  (*Id.* at PageID.381).  Further, within a year of the accident, Plaintiff's surgeon stated she was able to move around with a cane with "very minimal limp," had fairly good range of motion in her left hip, and that her recovery had been going reasonably well.  (*Id.* at PageID.966).

In May 2011, Plaintiff stated she had "intermittent pain in her left hip, especially with any prolonged walking or standing.  (*Id.* at PageID.1160).  However, the notes reflect "[s]he [was] active at school and attempting to educate herself to find a better pain [sic] job that [did] not require manual labor."  (*Id.*).  Further, although Plaintiff "walked with an antalgic gait" she did not require an assistive device and there was no sign of instability in her hip.  (*Id.* at PageID.1141).

### b.  Psychological Impairments

The ALJ found that Plaintiff's closed head injury does not meet or medically equal the criteria of listing 12.02 as her mental impairment does not cause one "extreme" limitation or two "marked" limitations.  (*Id.* at PageID.44).  An extreme limitation "is the inability to function independently, appropriately or effectively, and on a sustained basis."  (*Id.*).  A marked limitation means "functioning in this

area[3] independently, appropriately, effectively, and on a sustained basis is seriously limited." (*Id.*).

Over the course of several neuropsychological evaluation sessions from September 25, 2008 to October 15, 2008, Plaintiff expressed that her depression and crying spells were normal and "something she needed to go through. (*Id.* at 381). She also expressed optimism about eventually being able to return to work at the location where she was employed in April of 2008. (*Id.*). Further, although she was unable to recall the details of the 2008 car accident, her fiancé at the time reported that Plaintiff's memory had improved since she left the hospital. (*Id.*) Plaintiff's (i) "performance on measures of attention and concentration generally fell within the average to high average range;" (ii) speed of processing a reading task was average relative to her vocabulary and peers; (iii) "auditory attention and concentration were high average;" (iv) performance on a verbal learning assessment "displayed a high average learning slope;" (v) performance on a story memory task was rated "high average"; (vi) performance on an immediate visual memory assessment fell within the low average range; (vii) performance on visual constructional abilities and organization displayed "intact spatial organization and planning"; (viii) performance on language function test demonstrated that fluency,

---

[3] The areas are understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. (ECF No. 7, PageID.at 44).

comprehension and repetition were intact; (ix) performance on problem solving

tasks displayed "intact behavioral and mental flexibility;" and (x) performance "on

various abstract reasoning and category-sorting tasks" displayed that her overall

reasoning was "high average and somewhat higher than what would be expected."

(*Id.* at 383-84). Overall, her performance revealed "intact capacity to anticipate

consequences and modify her behavior based upon feedback." (*Id.* at 384).

Ultimately, the doctor concluded "there was no evidence of cognitive impairment

due to [her] concussion," "the only barrier to school and work at [that] time

appear[ed] to be related to her physical impairments," and a "[n]europsychological

reevaluation [would] not be necessary." (*Id.* at PageID.385).

On February 23, 2009, Plaintiff participated in an induvial session with her

neuropsychologist. (*Id.* at 386). She expressed that "she had been feeling

depression and had previously had suicidal thoughts." (*Id.* at PageID.386).

However, the psychiatrist noted that while Plaintiff "experienced some adjustment

related depression and anxiety" the psychiatrist felt there were no "acute suicidal

issues." (*Id.*). Further, Plaintiff was not "especially motivated to participate in

psychotherapy" and felt she was "functioning much better" since moving from her

boyfriend's family home. (*Id.*). While Plaintiff agreed to remain on Cymbalta for

some time, the neuropsychologist would only see her as required by the

circumstances. (*Id.*). In her February 25, 2009 letter, Plaintiff's neuropsychologist

noted that Plaintiff "was relatively positive with regard to the future" and deferred the finding as to whether Plaintiff would be able to return to work due to her physical limitations as at that time Plaintiff felt "like she would be able to [work] if allowed to." (*Id.* at PageID.387).

Based on the record, the ALJ made the following findings regarding Plaintiff's psychological impairments: (i) in understanding, remembering, or applying information, Plaintiff had a moderate limitation; (ii) in interacting with others, Plaintiff had a moderate limitation; (iii) in concentrating, persisting or maintaining pace, Plaintiff had a moderate limitation; and (iv) for adapting or managing oneself Plaintiff had experienced a moderate limitation. (*Id.* at 44).

Further, during the relevant time period Plaintiff had been able to care for her pets and small children while attending school which demonstrates she had more than a minimal capacity to adapt to changes in the environment or demands that were not currently a part of her daily routine. (*Id.* at 44-45).

## C.    The Administrative Decision

### 1.    The July 9, 2008 through January 5, 2011 Time Period

Pursuant to 20 C.F.R. § 404.1520(b), at Step 1 of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 9, 2008, the alleged onset date. (*Id.* at PageID.39). At Step 2, the ALJ found that from July 9, 2008 through December 31, 2020, the period during which

11

Plaintiff was under a disability, Plaintiff had the following severe impairments:

status post multiple pelvis fractures, closed head injury, left hip fracture status post

total replacement, and significant leg length discrepancy.  (*Id.*).  The ALJ found the

aforementioned determinable impairments significantly limited the ability to

perform basic work activities as required by SSR 85-28.  (*Id.*).  At Step 3, the ALJ

found that from July 9, 2008 through December 31, 2010 Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the

severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20

C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  (*Id.*).  Between Steps 3 and 4 of

the sequential process, the ALJ evaluated Plaintiff's residual functional capacity

("RFC")[4] and determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 404.
> 1567(a) except: the claimant could never push or pull;
> she could have occasionally operated a foot control with
> her right lower extremity but never with her left lower
> extremity; the claimant could never climb ladders, ropes
> or scaffolds; she could have occasionally climbed ramps
> and stairs, and balanced, stooped, kneeled, crouched, or
> crawled; the claimant was limited to jobs that allowed for
> the use of a handheld assistant device required for uneven
> terrain or while ambulating; the claimant must have
> avoided all exposure to vibration and unprotected
> heights; she could not have used hazardous machinery;
> the claimant was limited to simple, routine, repetitive
> tasks performed in a work environment free of fast pace

---

[4] The claimant's RFC is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> production requirements that involved only simple
> work-related decisions and routine workplace changes;
> she could have occasionally interacted with the public
> and co-workers; the claimant would have been off-task
> 20% of the day, in addition to regularly scheduled
> breaks; and due to the claimant's doctor's visits,
> symptoms, and medication side effects the claimant
> would have been absent from work 2 days per month.

(*Id.* at PageID.39-40).  At Step 4, the ALJ determined that transferability of job

skills was not an issue as Plaintiff did not have past relevant work.  (*Id.* at 42).

Although Plaintiff had no past relevant work experience, she has a high school

education and is able to communicate in English.  (*Id.*).  At Step 5, considering

Plaintiff's age, education, work experience, the VE's testimony [5] and RFC, the ALJ

determined no jobs existed in significant numbers in the national economy that

Plaintiff could have performed from July 9, 2008 through January 5, 2011.  (*Id.*).

### 3.    Post-January 5, 2011 Time Period

The ALJ found that as of January 5, 2011, the date Plaintiff's disability

ended, Plaintiff had not developed "any new impairment or impairments. . . ."  (*Id.*

at PageID.43).  Thus, Plaintiff's severe impairments as of the date of the ALJ's

decision were the same as those present from July 9, 2008 through January 5,

2011.  (*Id.*).  Subsequently, the ALJ found that Plaintiff experienced a medical

---

[5]  During the hearing, the VE testified there were no jobs in the national economy that Plaintiff could have performed from July 9, 2008 through January 5, 2011.  (ECF No. 7 at PageID.24).

improvement as of January 5, 2011.  (*Id.* at PageID.45).  This finding was based on

the following: (i) on January 5, 2011, Plaintiff's surgeon approved Plaintiff to

return to work (*Id.*) and (ii) in March of 2011, although the Plaintiff returned to

physical therapy due to an injury she sustained at work, she waited a month before

seeking treatment for said injury.  (*Id.*)  This evidence indicated to the ALJ that

Plaintiff's conditions improved sufficiently enough for her to effectively return to

work and interact with others.  (*Id.*).

The ALJ then evaluated Plaintiff's RFC and determined that Plaintiff had the

RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except:

> the claimant can never push or pull; she can occasionally
> operate a foot control with her right lower extremity but
> never with her left lower extremity; the claimant can
> never climb ladders, ropes or scaffolds; she can
> occasionally climb ramps and stairs, and balance, stoop,
> kneel, crouch, or crawl; the claimant is limited to jobs
> that allow for the use of a handheld assistant devices [sic]
> required for uneven terrain or while ambulating; the
> claimant must avoid all exposure to vibration and
> unprotected heights; she cannot use hazardous
> machinery; the claimant is limited to simple, routine,
> repetitive tasks performed in a work environment free of
> fast pace production requirements and involving only
> simple work-related decisions and routine workplaces
> changes and she can have occasional interaction with the
> public and co-workers.

(*Id.* at 45).

The ALJ then compared the claimant's residual functional capacity for the

period during which she was disabled to the residual functional capacity beginning

on January 6, 2011.  (*Id.*).  The ALJ found that as of January 6, 2011, claimant's

residual functional capacity for basic work activities had increased.  (*Id.*).

### D.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or medically equals the requirements of an impairment listed in the

regulations; (4) can return to past relevant work; and (5) if not, whether he or she

can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.

The Plaintiff has the burden of proof at steps one through four, but the burden

shifts to the Commissioner at step five to demonstrate that, "notwithstanding the

Plaintiff's impairment, he retains the residual functional capacity to perform

specific jobs existing in the national economy." *Richardson v. Sec'y of Health &*

*Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

If Plaintiff is found disabled at any point in the process, the ALJ must then

determine if her disability continued through the date of the decision or if Plaintiff

15

experienced a medical improvement related to Plaintiff's ability to work or that an

exception applies (20 C.F.R. § 4040.1594(a)).  If the medical record shows that

Plaintiff has experienced an improvement, the ALJ must then ascertain whether it

was a medical improvement by utilizing an eight-step sequential evaluation that

largely mirrors the traditional five-step sequential disability evaluation.  20 C.F.R.

§ 416.994(b)(5)(i)-(viii); 20 C.F.R. § 404.1594(f)(1-8).  The steps are:

> (1) Are you engaging in substantial gainful activity?  If
> you are . . . we will find disability to have ended. . . .
>
> (2) If you are not, do you have an impairment or
> combination of impairments which meets or equals the
> severity of an impairment listed in appendix 1 of this
> subpart?  If you do, your disability will be found to
> continue.
>
> (3) If you do not, has there been medical improvement as
> defined in paragraph (b)(1) of this section?
>
> (4) If there has been medical improvement, we must
> determine whether it is related to your ability to do work
> in accordance with paragraphs (b)(1) through (4) of this
> section....
>
> (5) If we found at step (3) that there has been no medical
> improvement or if we found at step (4) that the medical
> improvement is not related to your ability to work, we
> consider whether any of the exceptions in paragraphs (d)
> and (e) of this section apply....
>
> (6) If medical improvement is shown to be related to
> your ability to do work or if one of the first group of
> exceptions to medical improvement applies, we will
> determine whether all your current impairments in
> combination are severe. . . .

(7) If your impairment(s) is severe, . . . we will assess
your residual functional capacity based on all your
current impairments and consider whether you can still
do work you have done in the past.  If you can do such
work, disability will be found to have ended.

(8) If you are not able to do work you have done in the
past, we will consider whether you can do other work
given the residual functional capacity assessment. . . .  If
you can, we will find that your disability has ended.  If
you cannot, we will find that your disability continues.

20 C.F.R. §§ 404.1594(f), 416.994(f).

E.    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive. . . .")).  Under

this standard, "substantial evidence is defined as '*more than a scintilla of evidence*

*but less than a preponderance*; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)(emphasis added)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The Court's review is limited to an examination of the record only.  *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  Neither the ALJ nor the Court is required to discuss every piece of evidence contained in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

## F.    Governing Law

In cases such as this where the cessation of benefits is at issue, the crux of the issue is "whether the claimant's medical impairments have improved to the point where she is able to perform substantial gainful activity."  42 U.S.C. § 423(f)(1); *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007).  Whether an individual is entitled to continued benefits depends on whether "there has been any

medical improvement in [the individual's] impairment(s) and, if so, whether this medical improvement is related to [the individual's] ability to work."  20 C.F.R. §§ 404.1594(b), 416.994(b).

The cessation evaluation process is a two-prong process.  *See Kennedy*, 247 F. App'x at 764-65.  The first prong of the process focuses on medical improvement.  *Id.* at 764.  The implementing regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled."  *Id.* at 764-65 (citing 20 C.F.R. § 404.1594(b)(1)).  "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's impairment(s)."  20 C.F.R. §§ 404.1594(b)(1)(i), 416.994(b)(1)(i).  If there has been a decrease in the severity of the impairments since the favorable decision, the medical improvement is related to the individual's ability to work only if there has been a corresponding 'increase in[the claimant's] functional capacity to do basic work activities. . . . '"  *Kennedy*, 247 F. App'x at 765 (quoting 20 C.F.R. § 404.1594(b)(3)); *see also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 361 (6th Cir. 2001).

The second prong of the cessation analysis focuses on whether the individual has the ability to engage in substantial gainful activity. *Kennedy*, 247 F. App'x at 765. The implementing regulations for this part of the evaluation incorporate many of the standards set forth in the regulations that govern initial disability determinations. *Id.* (citing 20 C.F.R. § 404. 1594(b)(5) and (f)(7)). The difference is that "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)). An increase in the claimant's functional capacity will lead to a cessation of benefits only if, as a result, the claimant can perform her past work or other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1594(f)(7), (8), 416.994(f)(7), (8).

In deciding whether a recipient's entitlement to disability benefits has ended, the Commissioner uses the eight-step sequential evaluation process outlined in 20 C.F.R. §§ 404.1594(f)(l)-(8) and 416.994(f)(l)-(8); *Kennedy*, 247 F. App'x at 764.

Of import in this case, there is no presumption of continuing disability. *Kennedy*, 247 F. App'x at 764 (citing *Cutlip*, 25 F.3d at 286–287, n. 1). Instead, the Commissioner applies the procedures to determine whether the Plaintiff's disability has ended and if she is now able to work. *Id.* If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial

evidence supports the opposite conclusion.  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986).

G.      **Analysis and Conclusion**

The ALJ determined that as of January 6, 2011, Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) except:

> the claimant can never push or pull; she can occasionally operate a foot control with her right lower extremity but never with her left lower extremity; the claimant can never climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs, and balance, stoop, kneel, crouch, or crawl; the claimant is limited to jobs that allow for the use of a handheld assistant devices [sic] required for uneven terrain or while ambulating; the claimant must avoid all exposure to vibration and unprotected heights; she cannot use hazardous machinery; the claimant is limited to simple, routine, repetitive tasks performed in a work environment free of fast pace production requirements and involving only simple work-related decisions and routine workplaces changes and she can have occasional interaction with the public and co-workers.

(ECF No. 7, PageID.45).

The ALJ determined that as of January 6, 2011, Plaintiff experienced a medical improvement and her functional capacity for basic work activities had increased.  (*Id.*).

Plaintiff argues the main issue here is whether she experienced enough healing to allow the ALJ to find that she could perform a range of sedentary jobs.

(ECF No. 10, PageID.1375).  Plaintiff purports the ALJ erred in finding she experienced a medical improvement as the impairments that plagued her during her disability period, with the caveat that some of the impairments (e.g., broken ankles) were not present on January 5, 2011, continued to exist on January 6, 2011. (*Id.* at PageID.446, 1376).  She argues the medical records post-dating January 5, 2011 do not support the ALJ's conclusion that she experienced a medical improvement.  (ECF No. 10, PageID.1377).  Further, to support her argument Plaintiff alleges that she has required attendant assistance from 2008 until present. (*Id.*).  Ultimately, Plaintiff maintains that after reviewing the record it would be difficult to find she experienced a significant improvement in the major impairments[6] she suffered from.  (*Id.* at PageID.1376).

The Commissioner contends Plaintiff failed to attack the ALJ's decision and more so argues that there is evidence supporting her position.  (ECF No. 11, PageID.1379).  The Commissioner's position is that this argument is insufficient to overturn the ALJ's finding.  (*Id.*).  Further, the Commissioner argues the ALJ's decision is supported by substantial evidence and Plaintiff has failed to demonstrate otherwise.  (*Id.*)

---

[6] Plaintiff provides she is suffering from the following impairments: shattered left hip, fractured ankles, severely fractured foot, fractured pelvis, TBI, depression, anxiety, suicidal tendencies, complex pain syndrome, surgically repaired left hip, fibromyalgia, degenerative arthritis, and low back pain. (ECF No. 7, PageID.1376).  Plaintiff's fractured ankles stem from the 2014 motor vehicle accident.  (*Id.* at PageID.446, 1376).

The main issue in this case, as identified by both parties, is whether the ALJ's analysis of medical improvement leading to the conclusion that Plaintiff's RFC renders her able to work, is legally correct and supported by substantial evidence.  As explained in *Jackson v. Comm'r of Soc. Sec.*, 2018 WL 5316028, at *2-3 (E.D. Tenn. Oct. 9, 2018), *report and recommendation adopted*, 2018 WL 5315197 (E.D. Tenn. Oct. 26, 2018), at the third step of the eight-step process, the ALJ must determine whether there has been a "medical improvement."  20 C.F.R. § 404.1594(f)(3).  "Medical improvement" is defined as:

> [a]ny decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1).  Unlike initial disability determinations, "the ultimate burden of proof lies with the Commissioner in termination proceedings."  *Kennedy*, 247 F. App'x at 765, 768 (6th Cir. 2007) (citing 20 C.F.R. § 404.1594(b)(5), (f)(7); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)) (reversing and remanding because the Commissioner did not satisfy her burden of establishing medical improvement).  Indeed, the Commissioner's burden is twofold; he must  prove both "the severity of a claimant's impairment has medically improved, and that the claimant is now able to perform substantial gainful activity."  *Delacotera v. Colvin*,

2017 WL 169104 (E.D. Tenn. Jan. 1, 2017) (quoting *Little v. Comm'r of Soc. Sec.*,

2014 WL 656737, at *4 (S.D. Ohio Feb. 19, 2014) (citing 42 U.S.C. § 423(f)(1));

*Kennedy*, 247 F. App'x at 764-65).

To determine whether the claimant's impairments have "improved," the ALJ

uses the comparison point decision date, which is defined as "the most recent

favorable medical decision that you were disabled or continued to be disabled," as

a reference point. *Jackson*, 2018 WL 5316028 at *3 (quoting 20 C.F.R. §

404.1594(b)(7)).  If at the time of the disability review, a claimant's impairments

are less severe than they were at the comparison point decision date, then a medical

improvement has occurred, and the ALJ must proceed to step four and determine

whether the improvement is related to the claimant's ability to work. *Jackson*,

2018 WL 5316028 at *3 (citing 20 C.F.R. § 404.1594(f)(4)).  This requires the

ALJ to assess the claimant's current RFC and compare it to her RFC at the time of

the comparison point decision date. *See id*.

The ALJ found Plaintiff experienced a medical improvement on January 5,

2011 and specifically identified the following pieces of evidence to support his

finding: (i) on January 5, 2011, claimant's surgeon approved the claimant to return

to work (ECF No. 7, PageID.1164); and (ii) during March 2011, although the

Plaintiff returned to physical therapy due to an injury she sustained at work, she

waited a month before seeking treatment for said injury.  (*Id.* at PageID.45).

Moreover, Plaintiff's return to work exhibited that her "conditions improved sufficiently for her to effectively return to work and interact with others." (*Id.* at 45, 103, 227, 235). Further, less than a year after her accident, despite her physical impairments, Plaintiff told her neuropsychologist she was ready to return to work. (*Id.* at 387). Even more telling, at no point prior to January 4, 2011 or thereafter, prior to her 2014 motor vehicle accident, does the record show that Plaintiff expressed any reservations or concerns about returning to work due to her psychological impairments.

The facts in this case are analogous to those of *Schmidt v. Colvin*, 2017 WL 1030215, at *2 (E.D. Mich. Feb. 16, 2017). The core issue in *Schmidt* was whether there had been an increase in the plaintiff's functional capacity. *Id.* at *2. An increase in a claimant's functional capacity would lead to a "cessation of benefits only if, as a result the claimant can perform his or her past work or other work for which there exists significant numbers in the national community." *Campbell v. Comm'r of Soc. Sec.*, 2011 WL 2160460, at *5 (E.D. Mich. June 1, 2011). In *Schmidt*, the ALJ found that a medical improvement had occurred based on (i) plaintiff's March 3, 2015 statement that "his pain all but disappeared with medication" and (ii) except for "a visit in April 2015 in which [plaintiff] indicated back pain [ . . . ] he nevertheless appeared to be in no acute distress" and eventually completely stopped treatment for his physical impairments. *Schmidt*,

2017 WL 1030215 at *4.  The court explained "[i]f supported by substantial evidence, the Commissioner's findings of fact are conclusive" and affirmed the ALJ's findings.  *Id.* at *5.  Therefore, the court does not have the authority to "reverse the Commissioner's decision merely because it disagrees or because '*there exists in the record substantial evidence to support a different conclusion*.'" *Id.* at *5 (emphasis added).

Similar to *Schmidt*, in the instant case, the record contained evidence that Plaintiff's condition was improving–to wit, in 2008 Plaintiff stated she continued to experience persistent hip pain but "was now able to handle it without pain medications;" the 2010 and 2011 orthopedic records show Plaintiff had very little to no complaints regarding her hips; and the January 5, 2011 medical note that the doctor had "no restrictions with regards to work as a result of [Plaintiff's] hip." (*Id.* at PageID.1158, 1162, 1164-1165).  More importantly, the record contains the following additional evidence which supports the ALJ's finding in this case: (i) although in 2008 Plaintiff suffered a significant pelvis fracture, she was able to ambulate with a cane within six months of the accident.  (*Id.* at PageID.381); (ii) in May 2010, Plaintiff's orthopedic surgeon noted that although Plaintiff was experiencing intermittent pelvis pain, she had adequate range of motion and no instability during the physical examination (*Id.* at PageID.513); and (iii) Plaintiff returned to work after the January 5, 2011 medical notation (*Id.* at 45, 103, 227,

235).  While a medical improvement that is only temporary "would not support a finding that substantial gainful activity is possible [. . .] an improvement that mollifies an impairment over months can impact a finding of disability."  *Page v. Comm'r of Soc. Sec.*, 2017 WL 2889000 at *4 (E.D. Mich. July 06, 2017).  The aforementioned medical record notations exhibit that merely months after her 2008 car accident Plaintiff began to experience "an improvement that mollified one her significant impairments over the subsequent months leading up to January 5, 2011." *Id.*  Plaintiff argues that despite these medical records the post January 5, 2011 records do not support the finding of medical improvement.  (ECF No. 10, PageID.1377).  However, this argument is not persuasive as a significant portion of the medical documents, prior to Plaintiff's 2014 accident, shows that Plaintiff was making progress.  More importantly, "there is no requirement that medical improvement be permanent."  *Id.*  Thus, the evidence discussed in the ALJ's decision in addition to the evidence outlined above support and underscore that as of January 5, 2011 Plaintiff indeed experienced a medical improvement that related to her ability to work.

The above-mentioned medical evidence supports the ALJ's finding that Plaintiff experienced a medical improvement "such that [P]laintiff's functional capacity to do basic work activities ha[d] increased."  *Schmidt*, 2017 WL 1030215 at *7.  Therefore, the medical improvement experienced on January 5, 2011

required that Plaintiff's social security disability benefits be terminated.  20 C.F.R.

§§ 404.1594(f)(7), (8), 416.994(f)(7), (8).  Similar to *Schmidt*, the undersigned in

this case recommends that the ALJ's decision be affirmed as it is supported by

substantial evidence.  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th

Cir. 2006) (holding that if the Commissioner's decision is supported by substantial

evidence, the decision must be affirmed even if the court would have decided the

matter differently and even where substantial evidence supports the opposite

conclusion); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Although Plaintiff was later involved in a second motor vehicle accident in

2014 which resulted in her suffering additional injuries, the injuries originating

from the 2014 motor vehicle accident are not required to be considered as

Plaintiff's disability applications identify the July 9, 2008 accident as the source of

the injuries she is currently experiencing.  (ECF No. 7, PageID.35, 99).  Thus,

Plaintiff's discussion regarding the doctor visits, injuries and pain she experienced

following the 2014 motor vehicle accident are neither relevant nor persuasive.

(ECF No. 10, PageID.1375).  The relevant portions of the medical record show that

Plaintiff experienced a medical improvement as of January 5, 2011 and subsequent

medical records as discussed above support this finding.  (*Id.* at PageID.1158,

1162, 1164).

Lastly, as required, the ALJ in this case compared Plaintiff's RFC from the last date of her favorable social security finding to the date of the medical improvement and found, correctly, that on January 5, 2011 Plaintiff experienced a medical improvement that related to her RFC and allowed her to return to work. Therefore, she was no longer entitled to social security disability benefits after January 5, 2011.  The undersigned recommends that the court affirm the ALJ's finding as there is substantial evidence to support his decision.

### G. Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 10), **GRANT** Defendant's motion for summary judgment (ECF No. 11), and **AFFIRM** the Commissioner of Social Security's decision.

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 22, 2021                    s/Curtis Ivy, Jr.
                                        Curtis Ivy, Jr.
                                        United States Magistrate Judge